UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

D-3 DAMON DREKARR KEMP,

     Defendant.

_____/

Criminal No. 18-20043

Hon. Nancy G. Edmunds

## ORDER AND OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS [61]

This matter comes before the Court on Defendant Damon Kemp's motion to suppress all evidence found on his cell phone by a private insurance investigator. Defendant asserts that the investigator was acting as a government agent and therefore his warrantless review of the cell phone violated Defendant's Fourth Amendment rights. The Government opposes the motion. On October 15, 2018, the Court conducted an evidentiary hearing. For the reasons stated below, the motion is DENIED.

### I.    Facts

This is an unemployment insurance fraud case. On January 23, 2018, four defendants, Kyle Johnson, Kortez Johnson, Damon Kemp, and Shankei Perry, were indicted and charged with multiple counts relating to their scheme of filing false claims for unemployment benefits with the Michigan Unemployment Insurance Agency ("MUIA"). (Indictment, ECF No. 1.) According to the Government, the defendants acquired the

personal identification information ("PII")[1] of various individuals, used the PII to submit fraudulent unemployment insurance claims to the MIUA, and ultimately received the cash benefits. (*Id.*) The Government estimates that the defendants actually received approximately $199,402.00 in unemployment benefits and could have received up to $741,711.00 had all of their false claims been successful. (*Id.*)

This case originated with a U.S. Department of Labor investigation that discovered more than 100 unemployment insurance claims filed with the MIUA came from a single IP address. (Gov't Rsp. at 3, ECF No. 72.) The IP address was linked to the home of two of the defendants: Kyle and Kortez Johnson (the "Johnson Defendants"). (*Id.*) However, until it obtained a copy of Defendant Kemp's cell phone—the cell phone at issue here— the Government was not able to determine how the Johnson Defendants procured the PII they used to submit the false insurance claims. (*Id.*) After receiving a copy of Defendant's cell phone from a privately employed insurance investigator, the Government discovered that Defendant Perry was taking pictures of various individuals' PII at the dental office where she worked and sending the pictures to Defendant Kemp. (*Id.* at 6.) In turn, Defendant Kemp provided the PII to the Johnson Brothers to file the fraudulent unemployment insurance claims. (*Id.*)

The Government obtained a copy of Defendant's cell phone from David Adamczyk.[2] (*Id.*) A former police officer, Adamczyk is currently employed as a private insurance investigator. (Transcript of Suppression Hearing, October 15, 2018, at 41–42.) He was employed by the Michigan Investigative Group during his interactions with

---

[1] PII includes information such as an individual's name, address, date of birth, social security number, and other personal information unique to that individual that is necessary to, for example, submit a claim for unemployment benefits.

[2] Adamczyk testified at the October 15, 2018 hearing on Defendant's motion to suppress.

Defendant.[3] (*Id.* at 16.)   As a private investigator, Adamczyk is typically retained by insurance carriers and law firms to investigate the origin or cause of a fire. (*Id.* at 17–18.) His job involves helping his private clients determine the scope of their liability for an incident under an insurance policy. (*Id.*)   Adamczyk testified that his independent investigation into the cause of a particular fire on behalf of an insurance company sometimes overlaps with law enforcement's investigation into the cause of the same fire for the purposes of determining whether a crime was committed. (*Id.* at 18.)   When that happens, Admaczyk will work with law enforcement officers and share the information he collects. (*Id.* at 18–20.)   However, he generally does not act under the direction or control of law enforcement. (*Id.*)

Specifically as it relates to this case, after a fire at Defendant's home, Adamczyk was retained by Ameriprise (Defendant's insurance provider) to investigate the cause of the fire. (*Id.* at 20.)   As part of his investigation, Adamczyk made a copy of Defendant's phone. (*Id.* at 23–24.)   Adamczyk told Defendant that he was required to copy and review Defendant's phone to substantiate Defendant's story and whereabouts as it related to the cause of the fire. (Def.'s Mot. at Exhibit A.)   At the hearing, Adamczyk further explained that he decided to make a copy of and review Defendant's cell phone because he felt that some of the information Defendant provided was "not adding up." (Hr'g Tr. at 23–24.)

A transcript of the communications between Adamczyk and Defendant is attached to Defendant's motion. (Def.'s Mot. at Exhibit A.)   The record reflects that Defendant consented to Adamczyk making a copy of the entire phone based on Adamczyk's representations that: (1) Defendant's insurance claim would be denied if he did not allow

---

[3] Michigan Investigative Group is a private investigative agency licensed by the State of Michigan.

Adamczyk to make a copy of the phone (or Defendant would have to find a private company to make a copy, but Defendant could not use his phone until the private company made the copy); (2) only Adamczyk and his team would be reviewing the contents of the phone; and (3) Adamczyk would only be reviewing the contents of the phone in connection with the fire investigation on behalf of the insurance company and would not be reviewing any non-fire/arson related contents of the phone. (*Id.* at 6, Exhibit A.)

At the hearing, Adamcyzk testified that he reviewed the entire contents of Defendant's phone. (Hr'g Tr. at 23–24.) He explained that during his initial review he discovered notes, photographs, and text messages containing several different individuals' PII. (*Id.* at 25, 45.) He testified that he discovered an image of a foil stamping machine, which based on his own research he believed was used to print credit cards. (*Id.*) He testified to reviewing text messages where the Defendant allegedly made several references to needing more numbers and "needing plastic." (*Id.* at 25–26, 45.) And he testified to reviewing the text messages on Defendant's phone in which someone was transmitting the PII to Defendant. (*Id.*) As a result of his review of the cell phone, Adamczyk concluded that this content likely related to some sort of criminal activity.

Adamczyk reached out to his contact at the Arson Investigation Unit of the Detroit Fire Department, Lieutenant Theodore Copley, about what he found on the cell phone. (*Id.* at 39.) Lieutenant Copley went to Adamczyk's office where Adamczyk showed him a sample of the suspicious images containing the PII. (*Id.* at 7–8.) Although Adamczyk only showed Lieutenant Copley a sample of the images during this first meeting, Adamczyk testified that he reviewed all of the images and text messages on Defendant's

cell phone prior to contacting Lieutenant Copley. (*Id.* at 37.)  After this meeting, Lieutenant Copley issued a civil subpoena to the insurance carrier so that he could obtain a copy of the phone. (*Id.* at 40.)  Adamczyk provided a copy of Defendant's phone on a flash drive to Lieutenant Copley in response to the subpoena. (*Id.*)

Without obtaining a warrant, Lieutenant Copley reviewed all of the pictures and text messages on Defendant's phone.  Lieutenant Copley testified that he viewed the same suspicious content identified by Adamczyk and proceeded to contact the individuals whose personal information was in Defendant's phone. (*Id.* at 47.)  Several of the individuals Lieutenant Copley contacted claimed that they received letters from the unemployment office providing notice of an unemployment claim filed in their name. (*Id.* at 47–48.)  At that point, Lieutenant Copley contacted the Michigan Department of Labor and learned about an ongoing investigation into potential insurance fraud. (*Id.*)  Lieutenant Copley provided the names he discovered on Defendant's phone to the DOL. (*Id.*)  It turned out that there was significant overlap in the names found on Defendant's phone and the names previously identified in the DOL's investigation. (*Id.*)  Ultimately, through the information obtained by Lieutenant Copley, the Government was able to determine that Defendant Perry was the person who sent the pictures of the PII, and that Defendant Kemp provided the PII to the Johnson Defendants to make the fraudulent unemployment insurance claims.

## II.    Analysis

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  Fourth Amendment protections attach when a

"search" occurs. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010). A "search" occurs when the government infringes on an expectation of privacy that society is prepared to consider reasonable, *see United States v. Jacobsen*, 466 U.S. 109, 115 (1984), or where the government physically intrudes on a constitutionally protected area for the purpose of obtaining information, *see United States v. Jones*, 565 U.S. 400, 407-08 (2012). Fourth Amendment protections do not apply to a private search. *Jacobsen*, 466 U.S. at 113. Nor do they apply if the government merely replicates a prior private search. *Id.* at 115.

Here, Defendant moves to suppress the evidence obtained from his cell phone on the grounds that Adamczyk was acting as a police agent and conducted a warrantless search of the phone in violation of the Fourth Amendment. Defendant contends that although he consented to Adamczyk's review of his phone, that consent was obtained through coercion. Alternatively, Defendant argues that Adamczyk's review of the cell phone exceeded the scope of Defendant's consent. Put differently, Defendant argues that although he consented to Adamczyk's copying of his entire cell phone, that consent was limited by Defendant's expectation that Adamczyk would ignore anything not relevant to the fire.

The Government denies that Adamczyk was acting as a police agent. The Government argues that the Fourth Amendment does not apply to Adamczyk because he was acting in his capacity as a private insurance investigator when he searched Defendant's cell phone. The Government concedes, however, that Lieutenant Copley's subsequent warrantless review of the cell phone implicates the Fourth Amendment if Lieutenant Copley's search exceeded the scope of Adamczyk's initial private search. The

Government argues that the testimony presented at the hearing demonstrates Lieutenant Copley's search did not exceed the scope of Adamczyk's search and therefore no Fourth Amendment violation occurred.

## A. Investigator Adamczyk is not a government actor.

Whether Adamczyk is a government actor is significant because the Fourth Amendment protects individuals from "unreasonable searches and seizures" by the government, not private entities. U.S. CONST. amend. IV. Indeed, the Fourth Amendment "is wholly inapplicable" to searches and seizures by "a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Jacobsen*, 466 U.S. at 113–14 (internal quotation marks omitted).

The Sixth Circuit uses a two-part test to determine whether a private person is a government agent for the purposes of the Fourth Amendment. *United States v. Hardin*, 539 F.3d 404, 419 (6th Cir. 2008). "In the context of a search, the defendant must demonstrate two facts: (1) law enforcement 'instigated, encouraged or participated in the search' and (2) the individual 'engaged in the search with the intent of assisting the police in their investigative efforts.'" *Id.* (*quoting United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985)). If the defendant cannot show both of these facts, the private actor is not a government agent. *See United States v. Shepherd*, 646 Fed.Appx. 385, 388 (6th Cir. 2016); *United States v. Miller*, No. CV 16-47-DLB-CJS, 2017 WL 2705963, at *2–3 (E.D. Ky. June 23, 2017).

Here, Defendant has not presented any evidence that Lieutenant Copley or law enforcement instigated, encouraged, or participated in the initial search of Defendant's cell phone. There is no evidence that Lieutenant Copley or law enforcement asked

Adamczyk to perform the search of Defendant's cell phone or had any role in instigating or participating in the initial search.  Even assuming Lieutenant Copley was aware of Adamczyk's investigation into the fire at Defendant's house on behalf of Ameriprise and knew that Adamczyk's investigation necessarily involved reviewing the contents of Defendant's phone, there is no evidence that Lieutenant Copley or law enforcement compelled or encouraged Adamczyk to conduct his review of Defendant's cell phone or report his findings.

Defendant similarly fails to present any evidence that Adamczyk intended collect evidence for use in a criminal prosecution.  Adamczyk's investigation into the cause of the fire was entirely separate from the Government's investigation into the filing of fraudulent unemployment insurance claims.  Adamczyk had an entirely different purpose.  He was investigating the cause and origin of the fire in order to assist an insurance company in evaluating its liability for a claim.  He was not investigating criminal activity or collecting evidence to use in a criminal prosecution.

The Court agrees with the Government that whether Adamczyk coerced Defendant into consenting to the search or exceeded the scope of Defendant's consent is not relevant to the inquiry.  Defendant's objection to his insurance provider's conduct is a private matter not at issue in this criminal proceeding.  The evidence in the record does not establish that Lieutenant Copley or law enforcement instigated, encouraged, or participated in Adamczyk's review of Defendant's cell phone.  Nor does it establish that Adamczyk intended to collect evidence for use in a criminal prosecution against Defendant.  Accordingly, Adamczyk was not acting as a government agent when he conducted his review of Defendant's cell phone.

**B. Lieutenant Copley's search did not exceed the scope of Adamczyk's private search.**

Defendant does not argue, either in its briefing or at the hearing, that Lieutenant Copley's warrantless review of the cell phone violated the private search doctrine. Notwithstanding, the Government concedes that Defendant's Fourth Amendment rights may have been violated if Lieutenant Copley's subsequent warrantless review of Defendant's cell phone exceeded the scope of Adamczyk's private search. Thus although Defendant does not actually raise the issue, the facts of this case raise questions about the private search doctrine and its application here.

The private search doctrine permits a government agent to verify the illegality of evidence discovered during a private search provided the agent stays within the scope of the private search. *United States v. Lichtenberger*, 786 F.3d 478, 481–83 (6th Cir. 2015) (*citing Jacobsen*, 466 at 119–20). A government agent's invasion of a defendant's privacy "must be tested by the degree to which [the agent] exceeded the scope of the private search." *Jacobsen*, 466 U.S. at 115; *Lichtenberger*, 786 F.3d at 482. "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Jacobsen*, 466 U.S. at 117.

The Sixth Circuit has explained that "[u]nder the private search doctrine, the critical measures of whether a governmental search exceeds the scope of the private search that preceded it are how much information the government stands to gain when it re-examines the evidence and, relatedly, how certain it is regarding what it will find." *Lichtenberger*, 786 F.3d at 485–86 (*citing Jacobsen*, 466 U.S. at 119–20). Put differently, the key question is whether the government official "saw the exact

same images" the private searcher saw. *See United States v. Miller*, No. CV 16-47-DLB-CJS, 2017 WL 2705963, at *7 (E.D. Ky. June 23, 2017) (*quoting Lichtenberger*, 786 F.3d at 490).

Here, Adamczyk testified that he independently reviewed the entire contents of Defendant's cell phone, including all of the relevant text messages and all of the relevant pictures, prior to contacting Lieutenant Copley.  Based on this testimony, Lieutenant Copley's subsequent review of Defendant's cell phone did not exceed the scope of Adamczyk's review.  In other words, Lieutenant Copley (the government official) saw the same exact images, data, and text messages that Adamczyk (the private searcher) saw.

To be clear, the Court is cognizant of the heightened scrutiny that should be applied to warrantless searches of devices such as laptops and cell phones where privacy interests are high because of the large amount of information on those devices. *See Lichtenberger*, 786 F.3d at 488.  But the concerns raised by the Sixth Circuit in *Lichtenberger* are not presented by this case.

In *Lichtenberger*, the defendant's girlfriend, without his consent, hacked into his laptop and found a number of file folders containing images of child pornography. *Lichtenberger*, 786 F.3d at 480.  After the girlfriend called the police to report the child pornography images, an officer came to the home and directed the girlfriend to access the laptop and open the files. *Id.*  The girlfriend testified that she showed the officer a few of the images on the computer, but she was not sure if they were the same images or from the same files she initially viewed on her own. *Id.* at 481.  She also was not sure whether the other files in the folder where she found the child pornography contained

more images of child pornography or contained other data or information. *Id.* The Sixth Circuit held the police officer's warrantless search of the defendant's laptop computer exceeded the scope of the defendant's girlfriend's search because the officer was not virtually certain that his review would be limited to the images the girlfriend had previously viewed. *Id.* at 485–88.

In contrast to *Lichtenberger* where the defendant's girlfriend physically hacked into the defendant's computer, here, Defendant consented to Adamczyk's review of his entire phone. More importantly, Adamczyk testified that he reviewed every text message and every image on the phone prior to contacting Lieutenant Copley. Thus unlike the officer in *Lichtenberger*, Lieutenant Copley's subsequent warrantless review of Defendant's cell phone did not expand beyond the scope of Adamczyk's initial private review. Adamczyk previously viewed all of the same images, data, and text messages that Lieutenant Copley ultimately saw upon his own review. Therefore Lieutenant Copley's warrantless review of Defendant's cell phone falls within the private search doctrine and no Fourth Amendment violation occurred.

## III. Conclusion

Adamczyk's review of Defendant's cell phone does not implicate the Fourth Amendment because it was a private search. Further, Lieutenant Copley's subsequent warrantless search of Defendant's cell phone did not exceed the scope of Adamczyk's private search. Accordingly, Defendant's Motion to Suppress (ECF No. 61) is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

11

Dated: October 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager